UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SUSAN JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>VITAL RECOVERY SERVICES, LLC, and LENDINGCLUB CORPORATION,<br><br>　　　　　Defendants. | Case No.: 18-cv-558<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Susan Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant Vital Recovery Services, LLC ("Vital") is a debt collection agency with its principal place of business located at 3795 Data Drive, Suite 200, Peachtree Corners, Georgia 30092.

7. Vital is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Vital is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Vital is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant LendingClub Corporation ("LCC") is a foreign business corporation with its principal place of business located at 71 Stevenson, Suite 300, San Francisco, California 94105.

11. LCC issues consumer loans, using an internet-based matching system where private investors fund private borrowers' personal loans, with LCC assuming the role of the bank to facilitate and service the loans.

12. With respect to consumer loans such as the one at issue in this case, LCC enters into contracts with "WebBank," a Utah state chartered industrial bank, which acts as a "pass through" funding agent. Although the consumer deals with LCC, WebBank originates the consumer loan.

13. Within days of origination, WebBank transfers the note to LCC in exchange for LCC investors' funding and a portion of the loan origination fee.

2

14. With respect to the consumers, LCC acts as the creditor of these loans.

15. Upon information and belief, the primary purpose of LCC's business and LCC's principal purpose is issuing, purchasing, and collecting consumer debts.

16. Upon information and belief, LCC purchases, owns, and collects those consumer debts.

17. Debt purchasers, including LCC, are debt collectors as a matter of Wisconsin law.

18. On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

19. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

20. At a minimum, debt buyers like LCC engage in debt collection indirectly through servicing and collection agents. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

21. LCC is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer loan, which was originated by WebBank. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

3

22. The WCA's debt collection chapter applies to all persons collecting, either directly or indirectly, consumer debts, including debts owed to themselves. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

23. The Wisconsin Department of Financial Institutions ("DFI") has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

24. LCC uses ordinary collection methods such as mail and telephone communications, third-party debt collectors, including Vital, and civil lawsuits to collect allegedly defaulted debts that have been assigned to them.

25. LCC is a debt collector as defined in Wis. Stat. § 427.103(3).

26. A company meeting the definition of a "debt collector" (here, LCC) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

**FACTS**

27. Sometime prior to September 8, 2017, Plaintiff obtained a consumer loan. Plaintiff's consumer loan was obtained from LCC but the loan was originated by WebBank,

4

which acted as a "pass through" entity. Upon information and belief, within days of origination, WebBank sold the loan to LCC.

28. On or about September 8, 2017, LCC mailed Plaintiff a debt collection letter regarding an alleged debt owed to LCC associated with the consumer loan Plaintiff obtained from LCC. A copy of this letter is attached to this complaint as Exhibit A.

29. The alleged debt referenced in Exhibit A was allegedly incurred only for personal, family, or household purposes. Plaintiff did not obtain the loan for any business purpose.

30. Upon information and belief, Exhibit A is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

31. Upon information and belief, Exhibit A is a form debt collection letter, used by LCC to attempt to collect alleged debts.

32. Exhibit A contains the following:

Loan Number: #█████1695

Dear Susan,

This is a friendly reminder that your monthly loan payment of $131.79 was due on 08/23/2017. If you've already made a payment, please disregard this notice.

Exhibit A.

33. Exhibit A states that, as of September 8, 2017, Plaintiff's account with a "Loan Number" ending in 1695 was past due in the amount of $131.79.

34. On or about September 18, 2017, LCC mailed Plaintiff another debt collection letter regarding this same alleged debt owed to LCC. A copy of this letter is attached to this complaint as Exhibit B.

35. Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

5

36. Upon information and belief, Exhibit B is a form debt collection letter, used by LCC to attempt to collect alleged debts.

37. Exhibit B contains the following:

**Loan Number: #▮▮▮▮▮1695**

Dear Susan,

Your account is now past due in the amount of $131.79. If you've already made a payment, please disregard this notice. If not, it's important to understand that each missed payment will **negatively impact your credit history.**

We value your business; however, in accordance with our company policy we often engage professional collection agencies to handle past-due accounts.

Exhibit B.

38. Exhibit B states that, as of September 18, 2017, Plaintiff's account with a "Loan Number" ending in 1695 was past due in the amount of $131.79.

*September 26, 2017 Letter*

39. On or about September 26, 2017, Vital mailed a debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibits A and B, identifying the "Original Creditor" as "WebBank." A copy of this letter is attached to this complaint as Exhibit C.

40. The alleged debt referenced in Exhibit C was allegedly incurred for personal, family or household purposes, namely a personal consumer loan, used only for personal, family, or household purposes.

41. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

42. Upon information and belief, Exhibit C is a form debt collection letter used by Vital to attempt to collect alleged debts.

6

43. Exhibit C is the first written communication Vital sent to Plaintiff regarding the alleged debt referenced in Exhibit C.

44. Exhibit C includes the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify Vital Recovery Services, LLC within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, LLC will assume this debt is valid. If you notify Vital Recovery Services, LLC in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, LLC will obtain verification of the debt or obtain a copy of a judgment and will mail you a copy of such judgment or verification. If you request of Vital Recovery Services, LLC in writing within 30 days after receiving this notice Vital Recovery Services, LLC will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit C.

45. Exhibit C does not state the name of the creditor to whom the debt is owed in a non-confusing manner.

46. Text on Exhibit C identifies the "Current Creditor" of the account as "Banco Popular North America" ("Banco Popular") and the "Original Creditor" as "WebBank":



Exhibit C.

7

47. However, Exhibit C also contains the following text:

> Vital Recovery Services, LLC is now servicing the LOAN account noted to the right that is held by Banco Popular North America. This account was serviced by Lending Club and they have placed it with us for collections.

Exhibit C.

48. Exhibit C is false, misleading, contradictory, and confusing to the unsophisticated consumer, in that it is patently unclear as to the name of the creditor to whom the debt is owed.

49. Exhibit C identifies Banco Popular as the "current creditor" in one place but also specifically states that "This account was serviced by Lending Club and they have placed it with us for collections."

50. On the face of Exhibit C, it is unclear whether LCC is still "servicing" the account.

51. Exhibit C says "they have placed it with us for collections." On the face of Exhibit C, it is unclear to whom "they" refers. Either of LCC or Banco Popular may have "placed" the account for collections.

52. Exhibit C also states:

 Mail check or money order payable to Vital Recovery Services. LLC

Exhibit C.

53. The unsophisticated consumer would be confused by the contradictory statements and implications as to who the actual creditor is.

54. Exhibit C also states the "Original Account #" is a number ending in 1695 and that the "New Account #" is a number ending in 7403.

8

55. The "Original Account #" ending in 1695 corresponds to the account number that LCC assigned the account. *Compare* Exhibit C *with* Exhibits A and B.

56. On the face of Exhibit C it is impossible to determine whether the "New Account #" refers to a new number that Banco Popular assigned the account after it purportedly purchased the debt or an account number that Vital assigned the account after LCC placed the account with Vital for collections.

57. On the face of Exhibit C, the name of the creditor to whom the debt is owed is patently unclear.

### *October 26, 2017 Letter*

58. On or about October 26, 2017, Vital mailed another debt collection letter to Plaintiff regarding the same alleged debt, identifying the "Original Creditor" as "WebBank." A copy of this letter is attached to this complaint as Exhibit D.

59. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

60. Upon information and belief, Exhibit D is a form debt collection letter used by Vital to attempt to collect alleged debts.

61. Exhibit D contains the following:



9

62. Exhibit D states that the "Current Creditor" of the account is LCC.

63. Unlike Exhibit C, Exhibit D does not refer to "Banco Popular" at all.

64. Exhibit D references the same "New Account #" and "Original Account #" as Exhibit C.

65. Upon information and belief, on September 26, 2017 and on October 26, 2017, the creditor of this account was LCC.

66. Upon information and belief, at all times relevant to this action---other than at the time of and immediately following origination---the creditor of this account was LCC.

67. On the face of Exhibits C and D it is impossible to determine the name of the creditor of the debt in question and whether the debt has been sold or otherwise assigned from LCC.

68. The unsophisticated consumer would be confused as to the character of the account, whether the debt has been sold to a third-party debt buyer, and if so, to whom.

69. Vital's misrepresentation is a material false statement about the character of the account. *E.g., Hepsen v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 92717, at *14 (M.D. Fla. Sept. 22, 2009), *aff'd by Hepsen v. Resurgent Capital Servs., LP*, 383 Fed. Appx. 877 (11th Cir. 2010).

70. Even a sophisticated consumer (or her attorney), who might understand that debts can be freely transferred, bought, and sold, would not be able to determine who actually holds the debt from reading Exhibits C and D.

71. Exhibits C and D identify the original creditor in a way that would confuse and mislead the unsophisticated consumer.

72. Upon information and belief, LCC and Vital work in a scripted process to intimidate consumers by providing confusing and conflicting information about the status of the account, such as false representations to consumers that their accounts have been sold to third-party debt buyers, which are intended to deceive, mislead, confuse, and intimidate debtors into believing the debt has been sold, which has important implications for information in the debtors' credit reports. *See Banneck v. HSBC Bank USA, N.A.*, 2016 U.S. Dist. LEXIS 79980, at *21-23 (N.D. Calif. June 20, 2016) (discussing the reporting of consumer debts in cases of sale to a third-party debt buyer).

73. Plaintiff was confused by Exhibits A-D.

74. The unsophisticated consumer would be confused by Exhibits A-D.

75. Plaintiff had to spend time and money investigating Exhibits A-D.

76. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-D.

### *The FDCPA*

77. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA

11

sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

78. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

79. A debt collector cannot make confusing representations about the identity of the creditor in a collection letter.

80. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

81. 15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

82. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

83. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, Defendant's misrepresentation and confusion of the current creditor's identity is a material misstatement. *Janetos*, 825 F.3d at 317, 324-25 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after '"pay to the order of' on the payment check to ensure the debt is satisfied.'" (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar 1, 2013)).

84. The unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibits C and D, which identify four separate entities potentially seeking to collect the debt: Vital, LCC, Banco Popular, and Webbank.

85. The unsophisticated consumer receiving Exhibits A-D would be unsure whether LCC or one of the other named entities was the actual current creditor as of the date of each letter because Exhibit C refers to LCC's involvement with the account in the past tense and names Banco Popular as the "current creditor," whereas Exhibit D refers to LCC as the "current creditor."

86. 15 U.S.C. § 1692f generally prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."

87. 15 U.S.C. § 1692g(a) states, in pertinent part:

**Notice of debt; contents**

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed;

15 U.S.C. § 1692g(a)(2).

88. To satisfy § 1692g(a)(2), a debt collector may provide "the name under which [the creditor] usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation." *Blarek v. Encore Receivable Mgmt.*, No. 06-cv-420-WEC, 2007 U.S. Dist. LEXIS 22549 at *22 (E.D. Wis. Mar. 27, 2007).

89. The Seventh Circuit has held that a debt collector must state the name of the creditor in a non-confusing manner:

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

90. There is no requirement that a consumer make a showing of materiality for a debt collector's failure to comply with 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

### *The WCA*

91. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

92. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

93. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

94. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

95. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

15

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

96. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

97. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

98. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

99. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

100. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## **COUNT I – FDCPA**

101. Count I is brought against Defendant Vital.

102. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

16

103. <u>Exhibits C and D</u> contain false, deceptive, misleading, confusing, and contradictory statements as to the identity of the current creditor.

104. The unsophisticated consumer would be confused and misled as to the identity of the creditor and would feel intimidated into paying the debt.

105. Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect the alleged debt.

106. Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

107. Defendant's misstatement of the name of the creditor is an unfair and unconscionable means of collecting or attempting to collect the alleged debt.

108. The misstatement is material, in that the unsophisticated consumer would not be able to determine who actually holds the debt from reading <u>Exhibits C and D</u> and may mistakenly make a payment to the wrong entity.

109. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(2).

## COUNT II – WCA

110. Count II is brought against both Defendants.

111. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

112. <u>Exhibits C and D</u> contain false, deceptive, misleading, confusing, and contradictory statements as to the identity of the current creditor.

113. The unsophisticated consumer would be confused and misled as to the identity of the creditor and would feel intimidated into paying the debt.

114. Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect the alleged debt.

115. Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

116. Defendant's misstatement of the name of the creditor is an unfair and unconscionable means of collecting or attempting to collect the alleged debt.

117. The misstatement is material, in that the unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibits C and D. As a result, the consumer would feel intimidated and harassed, and may mistakenly make a payment to the wrong entity.

118. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

119. Plaintiff brings this action on behalf of two Classes.

120. Class I ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a series of collection letters by Vital in the form represented by Exhibits C and D to the complaint in this action (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) where the first letter stated the "Current Creditor" was Banco Popular and the second letter stated the "Current Creditor" was LCC, (e) and the second letter was mailed between April 10, 2017 and April 10, 2018, inclusive, (f) and neither letter was returned by the postal service.

121. Class II ("Nationwide Class") consists of (a) all natural persons in the United States of America, (b) who were sent a series of collection letters by Vital in the form represented by Exhibits C and D to the complaint in this action (c) attempting to collect a debt

18

incurred for personal, family, or household purposes, (d) where the first letter stated the "Current Creditor" was Banco Popular and the second letter stated the "Current Creditor" was LCC, (e) and the second letter was mailed between April 10, 2017 and April 10, 2018, inclusive, (f) and neither letter was returned by the postal service.

122. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

123. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A-D</u> violate the FDCPA and/or the WCA.

124. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

125. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

126. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

### **JURY DEMAND**

127. Plaintiff hereby demands a trial by jury.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 10, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com